USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6/8/12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

UNITED STATES OF AMERICA

    - against -

ROSIE TINEO,

               Defendant.

------------------------------------X

671

08 Cr. 767 01 (RWS)

SENTENCING OPINION

**Sweet, D.J.**


On March 20, 2012, Rosie Tineo ("Tineo" or
"Defendant") pleaded guilty to one count of health care fraud,
in violation of 18 U.S.C. § 1347.  For the reasons set forth
below, Tineo will be sentenced to a term of probation of two
years, including 100 hours of community service.


**Prior Proceedings**


On July 7, 2008, Indictment 08 Crim. 671(RWS) was
filed in the Southern District of New York.  Count One of the
Indictment charges that from May 2007 through February 2008, in
the Southern District of New York and elsewhere, Tineo and Ledys
Liz ("Liz"), and others known and unknown, conspired to commit

1

health care fraud, in violation of 18 U.S.C. § 1349.   Count Two
of the Indictment charges that from May 2007 through February
2008, in the Southern District of New York and elsewhere, Tineo
and Liz, and others known and unknown defrauded the Medicaid
Program into paying for prescription drugs that were not
dispensed to Medicaid beneficiaries, in violation of 18 U.S.C. §
1347.

On March 20, 2012, Tineo appeared before the Honorable
Kevin N. Fox and allocuted to Count Two in accordance with a
plea agreement.

Tineo's sentencing is currently scheduled for June 12,
2012.

**The Sentencing Framework**

In accordance with the Supreme Court's decision in
United States v. Booker, 543 U.S. 220 (2005), and the Second
Circuit's decision in United States v. Crosby, 397 F.3d 103 (2d
Cir. 2005), the sentence to be imposed was reached through
consideration of all of the factors identified in 18 U.S.C.
§ 3553(a), including the Advisory Guidelines.   Thus, the

sentence to be imposed here is the result of a consideration of:

     (1)   the nature and circumstances of the offense and the history and characteristics of the defendant;

     (2)   the need for the sentence imposed —

          (A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

          (B)   to afford adequate deterrence to criminal conduct;

          (C)   to protect the public from further crimes of the defendant; and

          (D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

     (3)   the kinds of sentences available;

     (4)   the kinds of sentence and the sentencing range established for —

          (A)   the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .;

     (5)   any pertinent policy statement . . . [issued by the Sentencing Commission];

     (6)   the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

     (7)   the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). A sentencing judge is permitted to find all the facts appropriate for determining a sentence, whether

that sentence is a so-called Guidelines sentence or not.   See
Crosby, 397 F.3d at 114-15.

**The Defendant**

The Court adopts the facts set forth in the
Presentence Investigation Report ("PSR") with respect to Tineo's
personal and family history.

**The Offense Conduct**

The following description draws from the PSR.  The
specific facts of the underlying conduct are adopted as set
forth in that report.

The New York State Medicaid Program (the "Medicaid
Program") is a federal and state funded plan, affecting
commerce, that serves individuals and families who meet
specified financial and other eligibility requirements and
certain other individuals who lack adequate resources to pay for
medical care.  The Medicaid Program provides payment for medical
services and products ranging from routine preventive medical
care for children to institutional care for the elderly and

disabled.  Among the specific medical services and products provided by the Medicaid Program are prescription drugs.  The Medicaid Program reimburses service providers, such as physicians and pharmacies, directly for any medications or services provided to Medicaid Program beneficiaries.

Rosa Pharmacy was located in New York, New York, and was enrolled in the New York State Medicaid Program as a service provider.  Tineo worked as a pharmacy technician at Rosa Pharmacy.  Liz recruited Medicaid beneficiaries to become customers of Rosa Pharmacy.

As a Medicaid enrolled pharmacy, Rosa Pharmacy was supposed to dispense prescription drugs to Medicaid beneficiaries, submit claims to the Medicaid Program for reimbursement for those drugs, and receive payments from the Medicaid Program.

Between May 2007 and February 2008, Tineo and Liz engaged in a scheme to defraud the Medicaid Program into paying reimbursements to Rosa Pharmacy for prescription drugs that were not in fact dispensed to Medicaid beneficiaries.  As a part of the scheme, Liz recruited Medicaid beneficiaries to provide Liz

with their Medicaid cards and prescriptions, which Liz then provided to Tineo.  Tineo then billed the Medicaid Program for various prescription drugs, including drugs for which there was no legitimate prescription.  Tineo and Liz diverted those prescription drugs for re-sale on the street, and Tineo paid some fraction of the proceeds to the Medicaid beneficiaries.

Through this fraudulent scheme, Tineo and Liz profited by pocketing the difference between the total proceeds from their illegal sales of the diverted drugs and the amounts that Tineo paid to the Medicaid beneficiaries.

Liz recruited Medicaid beneficiaries who presented prescriptions and their Medicaid cards to the defendants in exchange for cash and/or merchandise instead of the prescribed medications.  Tineo submitted and caused to be submitted phony claims to the Medicaid Program for reimbursement for the prescription drugs that had purportedly been provided to the beneficiaries, but which in fact had never been dispensed to the Medicaid beneficiaries, and Tineo diverted the prescription drugs the Medicaid Program paid for and caused drugs to be sold on the street.

On May 2, 2007, Liz took an active Medicaid card from an undercover Medicaid Program investigator officer posing as a Medicaid beneficiary (the "UC") and promised to pay the UC for use of the card.  On September 14, 2007, Tineo and Liz met with the UC at Liz' apartment.  During that meeting, Tineo wrote prescriptions for the UC for five drugs using blank prescriptions.  Tineo then directed the UC to report to Rosa Pharmacy the next day to fill the fraudulent prescriptions.

On September 15, 2007, Liz visited Rosa Pharmacy with the UC, and during that visit Tineo, who was working behind the counter, filled the five fraudulent prescriptions that Tineo had completed the previous night.  Rosa Pharmacy billed the Medicaid Program for the full reimbursement value of those drugs and Liz received the actual drugs from the UC, who had been directed to give them to Liz.

On September 26, 2007, Liz paid the UC approximately $160 for the five prescriptions that had been filled at Rosa Pharmacy on September 15, 2007.  On February 25, 2008, in response to the UC's complaint about Liz' delay in paying him kickbacks, Tineo assured the UC that in the future Tineo would make payment as soon as the drugs were sold or earlier.

Often the medications were adulterated, labels were cleaned and expiration dates changed. Ultimately the adulterated drugs were distributed to pharmacies and wholesale pharmaceuticals throughout the United States. FBI informants confirmed that Tineo had been involved in diverting pharmaceuticals since 2006 and profited thousands of dollars.

## The Relevant Statutory Provisions

Pursuant to 18 U.S.C. § 1347, the maximum term of imprisonment is 10 years.

If a term of imprisonment is imposed, the Court may impose a term of supervised release of not more than three years, pursuant to 18 U.S.C. § 3583(b)(2).

The Defendant is eligible for not less than one nor more than five years' probation by statute, pursuant to 18 U.S.C. § 3561(c)(1).

The maximum fine that may be imposed is $250,000, pursuant to 18 U.S.C. § 3571. A special assessment of $100 is

mandatory, pursuant to 18 U.S.C. § 3013.

## The Guidelines

The November 1, 2011 edition of the United States Sentencing Commission Guidelines Manual has been used in this case for calculation purposes, pursuant to § 1B1.11(a).  The Defendant's applicable offense level, criminal history, recognition of responsibility, and term of imprisonment are as follows:

The guideline for a violation of 18 U.S.C. § 1347 is found in §2B1.1, which provides for a base offense level of 6 pursuant to §2B1.1(a)(2).  Since the loss exceeded $5,000 but did not exceed $10,000, the base offense level is increased by 2 levels, pursuant to §2B1.1(b)(1)(B).  As the offense involved the possession or use of an authentication feature, the base offense level is increased by 2 levels, pursuant to §2B1.1(b)(11).  Based on the Defendant's plea allocution, the Defendant has shown recognition of responsibility for the offense.  Pursuant to §3E1.1(a), the offense is reduced 2 levels.  Accordingly, the applicable offense level is 8.

According to the FBI and the New York State Division of Criminal Justice Services, Bureau of Identification, the Defendant has no prior criminal convictions. There is one pending charge based on a September 10, 2009 arrest. According to the police report, on March 1, 2007, at 130 West 228th Street, Bronx, New York, the Defendant allegedly received New York State Medicaid and food stamps benefits for which she was not entitled while residing out of state. Based on this criminal history, the Defendant has zero criminal history points and a Criminal History Category of I.

Based on a total offense level of 8 and a Criminal History Category of I, the Guidelines range for imprisonment is 0 to 6 months. The Guidelines range for a term of supervised release is at least 1 year but not more than 3 years, pursuant to §5D1.2(a)(2). Because the applicable guideline range is in Zone A of the Sentencing Table, the Defendant is eligible for probation, pursuant to §5B1.1(a)(1). If the Court imposes probation, the term must be at least 1 year, but not more than 5 years because the offense level for the instant offense is 8, pursuant to §5B1.2(a)(1). The fine range for the instant offense is $1,000 to $10,000 pursuant to §5E1.2(c)(3). Subject to the Defendant's ability to pay, in imposing a fine, the Court

shall consider the expected costs to the Government of any imprisonment, probation, or supervised release pursuant to §5E1.2(d)(7). The most recent advisory from the Administrative Office of the United States Courts suggests a monthly cost of $2,357.01 to be used for imprisonment, a monthly cost of $328.20 for supervision, and a monthly cost of $2,153.22 for community confinement.

## The Remaining Factors of 18 U.S.C. § 3553(a)

Having engaged in the Guidelines analysis, this Court also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a) to impose a sentence "sufficient, but not greater than necessary," as is required by the Supreme Court's decision in Booker, 543 U.S. 220, and the Second Circuit's decision in Crosby, 397 F.3d 103. Upon consideration of all of the relevant factors, it is concluded that the imposition of a sentence reflecting the Guidelines is warranted.

## The Sentence

For the instant offense, Tineo will be sentenced to 2 years' probation with a condition of that probation including

100 hours of community service.

As mandatory conditions of her probation, Tineo shall:

(1) not commit another federal, state, or local crime;

(2) not illegally possess a controlled substance;

(3) not possess a firearm or destructive device; and

(4) cooperate in the collection of DNA as directed by the probation officer.

(5) The mandatory drug testing condition is suspended based on the Court's determination that the Defendant poses a low risk of future substance abuse.

Furthermore, the standard conditions of supervision (1-13), set forth in the judgment, shall be imposed with the additional special condition:

(1) The Defendant shall perform 100 hours of community service as directed by the probation

officer.

A special assessment of $100, payable to the United States, is mandatory and shall be due immediately.

It is further ordered that the Defendant shall make restitution payable to the Clerk, U.S. District Court, for disbursements to Medicaid.  No information has been provided regarding restitution amounts.  The Court can delay restitution for 90 days after sentencing pursuant to 18 U.S.C. § 3664(d)(5).  Any restitution order that is entered should be jointly and severally with Liz.  The restitution shall be paid in monthly installments of 10% of gross monthly income over a period of supervision to commence 30 days after the date of the judgment or the release from custody if imprisonment is imposed.  The Defendant shall notify the U.S. Attorney for this District within 30 days of any change of mailing or residence address that occurs while any portion of the restitution remains unpaid.

In consideration of all the factors set forth in 18 U.S.C. § 3572(a), it does not appear that the Defendant is able to pay a fine, and so the fine in this case shall be

waived.

The terms of this sentence are subject to modification at the sentencing hearing scheduled for June 12, 2012.

It is so ordered.

New York, NY
June 7 , 2012

ROBERT W. SWEET
U.S.D.J.

14